IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL DOCKET NO.: 1:12-CV-262

JAMES O. CARSON, )
      Plaintiff, )
)
    vs. ) **Memorandum and Order**
)
CAROLYN W. COLVIN, )
Acting Commissioner )
of Social Security, )
      Defendant. )
_____)

**THIS CAUSE** is before the Court on Plaintiff, JAMES O. CARSON's Motion for Summary Judgment (Doc. 9) and Memorandum in Support of Summary Judgment (Doc. 10) and Defendant, CAROLYN W. COLVIN's Motion for Summary Judgment (Doc. 11) and Memorandum in Support of Summary Judgment (Doc. 12). For the following reasons, this Court will **DENY** Plaintiff's Motion for Summary Judgment, **GRANT** Defendant's Motion for Summary Judgment and **AFFIRM** the Commissioner's determination.

*I.    BACKGROUND*

On July 7, 2009, Plaintiff James O. Carson ("Plaintiff") filed an application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq*., and for Supplemental Security Income ("SSI") under Title XVI of the Act, 42 U.S.C. § 1383 *et seq*., alleging an inability to work due to a disabling condition beginning on June 20, 2008. (Doc. 12, at 2). Plaintiff's claim was initially denied on October 27, 2009 and again upon reconsideration on February 25, 2010. (Doc. 10, at 2). Subsequently, in response to Plaintiff's written request, a hearing was conducted on November 22, 2010, by Administrative Law Judge ("ALJ") Wendell

M. Sims. (Docs. 10, 12).

In a decision issued on March 4, 2011, the ALJ denied Plaintiff's claim for disability benefits; finding that Plaintiff was not disabled under sections 216(i), 223(d) and 1614(a)(3)(A) of the Social Security Act. (Tr. 63). On May 5, 2011, Plaintiff filed a request for review of the ALJ decision by the Appeals Council of the Social Security Administration. (Doc. 12). However, the request was denied on June 22, 2012 by customary notice and the ALJ decision became the Commissioner's final decision. (Doc. 10). Plaintiff initiated this lawsuit on August 23, 2012, with the timely filing of a Complaint in the United States District Court for the Western District of North Carolina to review the aforementioned final decision of the Commissioner. (Doc. 1).

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383 (c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, *Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *see also Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam*)*.

Furthermore, the Social Security Act provides, "The findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). As established in *Smith v. Heckler,* the Fourth Circuit defined "substantial evidence" as "[m]ore than a scintilla and doing more than creating a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Smith v. Heckler*, 782 F.2d 1176, 1179 (4th Cir. 1986). The Fourth Circuit has long recognized that it is the Court's responsibility neither to re-weigh the evidence, nor to substitute its judgment for that of the Commissioner, so long as the Commissioner's final decision is

supported by substantial evidence. *Hays*, 907 F.2d at 1456.

Ultimately, it is the duty of the Commissioner, not the courts, to make findings of fact and to resolve conflicts in the evidence. *Id.*; *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979) ("This court does not find facts or try the case *de novo* when reviewing disability determinations."); *Seacrist v. Weinberger*, 538 F.2d 1054, 1056 – 57 (4th Cir. 1976) ("We note that it is the responsibility of the Commissioner and not the Courts to reconcile inconsistencies in the medical evidence, and that it is the claimant who bears the risk of non-persuasion.") Indeed, so long as the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court disagrees with the final outcome. *Lester v. Schweiker*, 683 F.2d 838, 841 (4th Cir. 1982).

When considering cross-motions for summary judgment, the court "examines each motion separately, employing the Rule 56(c) standard." *Desmond v. PNGI Charles Town Gaming, L.L.C.*, 630 F.3d 351 (4th Cir. 2011) (internal citations omitted); *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (the Court reviews each motion separately on its own merits in order to "determine whether either party deserves judgment as a matter of law") (internal citations omitted). When considering each individual motion, the court must take care to "resolve all factual disputes and any competing, rational inferences in the light most favorable" to the party opposing the motion. *Rossignol*, 316 F.3d at 523.

### III.  THE ALJ'S DECISION

The Social Security Regulations define "disability," for the purpose of obtaining disability benefits, as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment[1] which can be expected to result in death

---

[1] A "physical or mental impairment" is an impairment resulting from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory

or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); *see also Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (quoting 42 U.S.C. § 423 (d)(1)(A)).To satisfy this definition, a claimant must have a severe impairment which makes it impossible to do previous work or any other substantial gainful activity that exists in the national economy. 20 C.F.R. § 404.1505(a); *see also* 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

1. *The Five-Step Sequential Analysis*

The Commissioner adheres to a five-step sequential analysis when determining if a claimant is disabled, pursuant to 20 C.F.R. §§ 404.1520, 416.920. *See Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n. 2 (4th Cir. 1999). The steps are as follows:

(1) Whether the claimant is engaged in substantial gainful activity.[2] If so, the claimant is not disabled and the analysis ends.

(2) Whether the claimant has a severe impairment.[3] If not, then the claimant is not disabled and the analysis ends.

(3) Whether the impairment meets or equals the medical criteria of 20 C.F.R., Part 404, Subpart P, Appendix 1, which sets forth a list of impairments that warrant a finding of disability without considering vocational criteria. If so, the claimant is disabled and

---

diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

[2] Substantial gainful activity is defined as work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves doing significant physical or mental activities (20 C.F.R. 404.1572(a) and 416.972(a)). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized (20 C.F.R. 404.1572(b) and 416.972(b)). Generally, if an individual has earnings from employment or self-employment above a specific level set out in the regulations, it is presumed that he has demonstrated the ability to engage in substantial gainful activity (20 C.F.R. 404.1574, 404.1575, 416.974, and 416.975).

[3] An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities (20 C.F.R. 404.1520(c) and 416.920(c)).

the analysis is finished.

(4) Whether the impairment prevents the claimant from performing past relevant work. If not, the claimant is not disabled and the analysis ends.

(5) Whether the claimant is able to perform any other work considering both his Residual Functioning Capacity ("RFC")[4] and his vocational abilities. If so, the claimant is not disabled.

20 C.F.R. §§ 404.1520, 416.920.

2. *The Residual Functional Capacity Determination*

Applying this process, the ALJ determined that Plaintiff had not engaged in "substantial gainful activity" since June 20, 2008 and Plaintiff suffered from several "severe impairments." (Tr. 13 – 15, Findings 1 – 3). Additionally, the ALJ determined that Plaintiff's impairment or combination of impairments did not meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1[5] and that Plaintiff had the Residual Functional Capacity ("RFC") to perform a reduced range of light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b). (Tr. 15 – 18, Findings 4 and 5). Based on the evidence as a whole, the ALJ determined that:

> the claimant has the residual functioning capacity to perform a reduced range of light work as defined in C.F.R. 404.1567(b) and 416.967(b). The claimant is able to lift up to twenty pounds occasionally and ten pounds frequently. The claimant is able to perform a job that will allow him to alternate between sitting and standing every thirty minutes. The claimant can use his lower extremities occasionally for pushing and pulling. The claimant

---

[4] "Residual Functioning Capacity" is the most a claimant can do in a work setting despite the physical and mental limitations of his impairment and any related symptom. *See* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); *see also, Mines v. Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "non-exertional limitations (i.e. mental, sensory or skin impairments)." *Hall v. Harris*, 658 F.2d 260, 265 (4th Cir. 1981).

[5] 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926.

can occasionally climb stairs, balance, and stoop, kneel, crouch, and crawl. The claimant can never climb ladders, ropes, or scaffolds, and should not work around hazards such as moving machinery or unprotected heights. The claimant can perform jobs that require occasional visual acuity. The claimant is able to perform simple, routine, repetitive tasks and meet the demands of "unskilled" work at a non-production pace and in an environment with occasional stress and occasional interpersonal interaction.

(Tr. 16). In reaching a conclusion regarding Plaintiff's RFC, the ALJ considered the evidence as a whole and found that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms ; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms was not credible to the extent they were inconsistent with the…residual functional assessment." (Tr. 18).

### 3. *Performance of Past Relevant Work*

The ALJ held that Plaintiff was unable to perform the functional demands of any of his past relevant work as a furniture upholster. (Tr. 22). The Vocational Expert ("VE") testified, and the ALJ relied upon the VE's testimony, that the Plaintiff's previous position was "medium in exertion and skill" and that Plaintiff could no longer perform it. *Id.*

### 4. *Adjustment to Existing Available Work in National Economy*

The claimant endures the initial burden of proving the presence of a disability. 42 U.S.C. § 423(d)(5); 20 C.F.R. §§ 404.1512, 416.202 – 03; *Smith v. Califano*, 592 F.2d 1235 (4th Cir. 1979). If Plaintiff can establish at step four that he cannot complete any work he has previously done in the past because of severe impairments, the burden then shifts to the Commissioner at step five. *Hunter,* 993 F.2d at 35; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980). The Commissioner must show that a significant number of jobs exist in the national economy of which Plaintiff can perform given his or her age, education, work experience, and RFC. *Id.* An ALJ may rely on the testimony of a VE in satisfying this burden. *See* 20 C.F.R. §§ 404.1566(e), 416.966(e); *Hammond v. Apfel*, 5 Fed. App'x 101, 106 (4th Cir. 2001) (unpublished). In order

for a V.E.'s testimony to be relevant, it must be in response to a proper hypothetical question that fairly sets out all of the claimant's impairments. *Walker v. Brown,* 889 F.2d 47, 50 – 51 (4th Cir. 1989); *see also Mickles v. Shalala*, 29 F.3d 918, 929 n.7 (4th Cir. 1994) (concluding that the hypothetical question presented to the VE need only include the impairments and limitations that the ALJ finds credible); *Fisher v. Barnhart*, 181 Fed. App'x 359, 365 (4th Cir. 2006) (unpublished) (concluding that a hypothetical question is unimpeachable if it adequately reflects an RFC for which the ALJ had sufficient evidence).

In the present case, the ALJ presented an appropriate hypothetical question based on the evidence in the record. Subsequently, the ALJ properly relied on the V.E's testimony in determining that there were jobs that "existed in significant numbers in the national economy"[6] that Plaintiff could perform. (Tr. 22 – 24, Findings 6 – 10).

## 5. *The VE's Testimony*

An ALJ's analysis must take into account not only the plaintiff's statements about his or her pain, but also "all the available evidence," including the plaintiff's medical history, medical signs, and laboratory findings; any objective medical evidence of pain; and any other evidence relevant to the severity of the impairment, such as evidence of the plaintiff's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it. *Craig*, 76 F.3d at 595.

In the present action, claimant was found to have the following limitations: 1) should not work around hazards such as moving machinery; 2) occasional visual acuity; 3) occasional interpersonal interaction. (Tr. 16). The ALJ charged with making the RFC determination presented the V.E. with the following hypothetical restrictions:

work requiring a sit/stand option, to sit for 30 minutes, stand if needed, occasional push/pull

---

[6] 20 C.F.R. §§ 404.1569, 404.1569(a), 416.969, and 416.969(a).

of the lower extremity, occasional climbing of stairs, no climbing of ladders, occasional balancing, stooping, kneeling, crouching, crawling, limited acuity, no hazards. Finally, any simple routine repetitive tasks with occasional interpersonal interaction at a non-production pace with occasional stress.

In response, the VE identified three jobs that Plaintiff could perform: 1) caller, companion, or patient sitter;"[7] 2) "glue machine operator or sanding machine operator….and the worker merely just loads the machine with the envelope blanks and the automated equipment or the machine puts the glue on the envelopes;"[8] and 3) "packaging and filling machine tender." (Tr. 60 – 61). Plaintiff argues that the VE's testimony is inconsistent with the Dictionary of Occupational Titles ("DOT"). In accordance with SSR 00-4p, the ALJ asked the VE if her testimony was consistent with that of the DOT and she responded in the affirmative. (Doc. 7-3). In addition, the VE provided a reasonable explanation for a minor conflict presented by Plaintiff arising from the "sit/stand" limitation in the RFC. (Tr. 62). The VE testified that she utilized her own "public works, experiences, and observations[9]" in order to answer hypothetical questions dealing with that particular limitation. *Id*. Accordingly, in light of the evidence presented by the VE and the credibility of her testimony, the ALJ properly relied on the aforesaid testimony when making his

---

[7] Companion (domestic ser.) shall be an individual that cares for elderly, handicapped, or convalescent person: Attends to employer's personal needs [PERSONAL ATTENDANT (domestic ser.)]. Transacts social or business affairs [SOCIAL SECRETARY (clerical)]. Reads aloud, plays cards, or other games to entertain employer. Accompanies employer on trips and outings. May prepare and serve meals to employer. DOT Code: 309.677-010.

[8] Actual title of this job is Sealing Machine Operator (paper goods) which is defined as an individual that tends a machine that applies sealing glue, such as dextrin or latex, to envelope flaps and dries them by passing envelopes under heat element: Fills glue reservoir, starts and regulates burners in drying unit, and loads automatic feedrack with envelopes. Observes machine operation and examines envelopes to detect malfunctioning in feeding, gluing, or drying process. Adjusts rollers to regulate glue flow, and turns rheostat to synchronize rate of envelope feed with glue applicator. Removes jammed material from rollers. DOT Code: 641.685-074.

[9] *See Singleton v. Astrue*, No. 9:08-1892-CMC-BM 2009 WL 1942191 (D.S.C.) (with all the information provided during the administrative hearing and based on his own experiences and observations, the vocational expert formulated his conclusion).

decision.

## 6. *The ALJ's Determination*

The ALJ found that based on Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform and that Plaintiff was not disabled from June 20, 2008, the alleged onset date, through the date of the ALJ's decision. (Tr. 24, Finding 11).

As previously noted, in rendering his decision, the ALJ relied on the VE's testimony in concluding that jobs exist in the national economy that Plaintiff could perform. (Tr. 23-24, Finding 10, 58 – 63). The ALJ stated:

> To determine the extent to which these limitations erode the unskilled light occupational base, the ALJ asked the V.E. whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and RFC. The V.E. testified that given all of these factors the individual would be able to perform the requirements of representative light and unskilled occupations such as companion (4,200 jobs in NC and 254,000 nationally); glue/cementing machine tender (550 in NC and 169,000 nationally); and packaging and filling machine tender (7,200 in NC and 180,000 nationally). These jobs are listed in the Dictionary of Occupational Titles ("DOT") as #309.677-010; 641.685-074; and 920.685-074, respectively.
>
> Pursuant to SSR 00-4p, the V.E.'s testimony is consistent with the information contained in the DOT.
>
> Therefore, based on the testimony of the V.E., the undersigned concludes that, considering the claimant's age, education, work experience, and RFC, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate under the framework of the above-cited rules.

(Tr. 23 – 24).

The parties argue that ambiguity exists regarding two of the DOT codes mentioned by the VE. Specifically, the VE referenced DOT codes 641.685-074 (glue/sanding machine operator) and

920.685-074 (packaging and filling machine tender). (Tr. 60 -61). However, the names associated with the aforementioned DOT codes are "Sealing Machine Operator" and "Package Sealer, Machine," respectively. (DOT codes 641.685-074 and 920.685-074). Neither party made an issue of the VE's testimony outside the "sit/stand" conflict, which the ALJ addressed. (Tr. 59 – 62). Given that the VE's testimony and the ALJ's corresponding decision are both consistent with the DOT and are not in conflict with the job descriptions provided by the VE, the ALJ's decision is adequately supported by substantial evidence.[10]

## IV. ANALYSIS

### 1. *The ALJ's assessment Is Supported By Substantial Evidence*

The Fourth Circuit has held that an ALJ has the duty to "explore all relevant facts and inquire into the issues necessary for adequate development of the record." *Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986). The ALJ is not required, however, "to function as the claimant's substitute counsel." *Bell v. Chater*, No. 95-1089, 1995 WL 347142, at *4 (4th Cir. June 9, 1995) (quoting *Clark v. Shalala,* 28 F.3d 828, 831-831 (8th Cir. 1994)). Plaintiff contends that the ALJ failed to fully develop the record. This is not the case. After a thorough review of the entire medical record and other relevant evidence, the ALJ provided a detailed explanation of his RFC assessment of the Plaintiff. (Tr. 16 – 21).

### A. Limitations from <u>Physical Impairments</u>

In regards to Plaintiff's knees, the ALJ stated:

> [t]he claimant has a history of degenerative joint disease with multiple surgeries on each knee, the last of which was in 2004 on the right knee. The last record from the claimant's orthopedic surgeon for the 2004 surgery, Dr. William

---

[10] *See Fisher v. Barnhart*, 181 Fed. App'x 359, 366 (4th Cir. 2006) (unpublished) (The court concluded that "the only reasonable interpretation of the entirety of the vocational expert's testimony is that he misremembered and, consequently, misspoke the job titles and codes in question. The Dictionary entries he meant to mention are not in conflict with his descriptions of them.").

> Geideman, is dated January 2005. While none of Dr. Geidemand's reports list any functional limitations, the claimant testified at the April 2008 hearing that he was released to return to light duty with no lifting greater than twenty pounds in a sit/stand work environment. The residual functional capacity does not exceed these work restrictions.

(Tr. 18). Regarding Plaintiff's diabetes, the ALJ explained:

> [t]he evidence shows that claimant is insulin-dependent….claimant's glucose readings were 157 in September 2009 and 76, 32, and 73 within a four-hour period in December 2009; however, these reports do not indicate whether they were before or after a meal. More recent records show that the claimant had elevated glucose (207) and AIC (8.2%) in February 2010, but the claimant admitted being completely out of medications. After three months of medication compliance, the claimant's A1C improved to 7.1%. According to the claimant's medication list, he continues to use forty (40) units of Lantus daily, but no longer requires Metformin as he did in the past.

(Tr. 19). The ALJ made the following determination regarding Plaintiff's diabetic retinopathy and other vision changes:

> [h]is subjective complaints including decreased visual acuity, blurred vision, and intermittent sensations of "sand" in his eyes. In November, 2010, his visual acuity was 20/80 in each eye and his visual fields were full. The claimant has undergone several procedures and is still actively treating with ophthalmologists. The claimant testified that he can watch television for two or three hours per day and he is able to see well enough to drive a car. Given the evidence, the undersigned is convinced that the claimant can perform work that requires occasional visual acuity.

(Tr. 19). In response to Plaintiff's hypertension, the ALJ stated:

> [t]he medical evidence shows that his blood pressure was 164/96 in September 2009; 185/110 in October 2009; 159/103 in November 2009; 160/112 in February 2010 when he was completely off medication, and improved to 160/88 in May 2010 after medication was restarted. Although Plaintiff's readings have been elevated, none of the above-referenced records show any complaints of headaches or dizziness as alleged. When the claimant did mention head pain during an emergency department visit in July 2010, he was out of medications and had a blood pressure reading of 209/119, the highest in the record…Although the medical evidence does not show persistent complaints of headache or dizziness, the undersigned has further limited the claimant to jobs that do not involve exposure to hazards or climbing of ladders, ropes, and scaffolds.

(Tr. 19).

### B. Limitations from <u>Mental Impairments</u>

When considering the evidence of Plaintiff's depression and anxiety, the ALJ provided:

> [i]t appears that the claimant has been compliant with mental health treatment….claimant's counselor, Lynne Head, MA, MS, LPC, reported that the claimant was in treatment for major depressive disorder and generalized anxiety disorder…Ms. Head noted that the claimant had been suicidal off and on since March 2009 and had a history of disturbed sleep…which improved from an average of two to three hours of sleep to up to five hours at a time with medication….claimant was initially prescribed Zoloft, an antidepressant, and Rozerem for insomnia in February 2010. In May 2010, the claimant's psychiatrist increased the Zoloft and added Seroquel…which claimant felt…were somewhat beneficial….Seroquel was increased from 50mg to 100mg….Regarding the claimant's testimony about hallucinations, the reports show that the claimant only mentioned them in August 2010, thus, that does not appear to be a persistent symptom.

(Tr. 20). Finally, when considering Plaintiff's mental disorders, the ALJ detailed that:

> [c]laimant's Global Assessment of Functioning (GAF) scores were 40 in December 2009 and 45 in November 2010. GAF scores are an examiner's rating of the claimant's symptoms based on the patient's subjective complaints. While the mental health records show such GAF scores, the undersigned notes that concurrent records from other providers do not indicate that the claimant complained of mental health symptoms or displayed overt signs of depression or anxiety. In fact, during an unrelated emergency department visit in July 2010, the claimant's mood and affect were normal. Furthermore, per the claimant's medication list, as of the hearing in November 2010, he was only taking Seroquel 10mg twice a day. He no longer requires Zoloft or a separate sleep aid, which suggests that the claimant's symptoms are stabilizing on Seroquel. Based on the evidence as a whole, the undersigned is convinced that the claimant retains sufficient concentration to perform simple, routine, repetitive tasks required for "unskilled" work. Given his complaints of decreased tolerance for stress, the undersigned finds that the claimant should perform tasks at a non-production pace and in an environment with only occasional stress and interpersonal interaction.

(Tr. 20-21). The ALJ has conducted a thorough assessment of the Plaintiff's mental health records and his decision is supported by substantial evidence. For the foregoing reasons, the Court concludes that the ALJ applied the correct legal standard regarding the RFC assessment.

### i. The ALJ properly evaluated Vocational Expert testimony, and his finding that other work exists that Plaintiff can do is supported by substantial evidence.

Plaintiff contends that the ALJ erred as a matter of law in denying his claim for Social Security Disability and Supplemental Security Income benefits because the final administrative decision was not based on substantial evidence as required by 42 U.S.C. § 405 (g).[11] Plaintiff asserts that there are unresolved conflicts between the testimony provided by the V.E. and the DOT. (Doc. 10, p. 1-2). However, this is not the case. Contrary to Plaintiff's assertions, there are no apparent conflicts between the VE's testimony and the DOT. The ALJ provided substantial evidence to support the finding that a significant number of jobs existed in the national economy that Plaintiff could perform given his limitations. Social Security 00-4p sets forth the standards for the use of vocational experts. The Ruling provides specific provisions regarding conflicts as follows:

> Occupational evidence provided by a vocational expert generally should be consistent with the occupational information supplied by the DOT. When there is an *apparent unresolved conflict* between vocational expert evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the vocational expert evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.

Social Security ruling 00-4p, *4-5 (emphasis added).[12]

---

[11] "Under the Social Security Act, the Court must uphold the factual findings of the Secretary if they are supported by substantial evidence and were reached through application of the correct legal standard." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996).

[12] This Ruling clarifies our standards for the use of a V.E. who provides evidence at hearings before ALJs… Neither the DOT nor the V.E. automatically "trumps" when there is a conflict. This Ruling emphasizes that before relying on V.E. evidence to support a disability determination or decision, our adjudicators must: Identify and obtain a reasonable explanation for any conflicts between occupational evidence provided by V.E.s and information in the Dictionary of Occupational Titles (DOT), including its

It is uncontested that the ALJ asked the V.E. if any conflicts existed between her testimony and the DOT. (Tr. 62). When questioned by the ALJ whether her opinions were consistent with the information in the DOT, the VE testified "Yes, sir, as far as I know." *Id.* Nevertheless, Plaintiff now asserts that all three of the jobs the ALJ determined the Plaintiff could perform are in conflict with the limitations set forth by the RFC assessment. (Doc. 10, p. 13). Plaintiff contends that the jobs expose him to either "frequent interpersonal interaction," "stooping," "frequent near acuity," or "to hazards," respectively. (Doc. 10, p. 13-15). Specifically, Plaintiff asserts that, according to the Selected Characteristics of Occupations ("SCO"), work as a Companion requires frequent physical demands of "Talking" and "Hearing," and that both the Sealer Machine Operator and Package Sealer, Machine positions are "hazardous and require stooping." (Doc. 10, p. 13-14).

Although SSR 00-4p requires an ALJ to elicit a reasonable explanation for "an apparent unresolved conflict" between VE testimony and the DOT, no such apparent unresolved conflict existed in this case. The VE testified, and the ALJ relied, on the record that her opinions were consistent with the DOT.[13] (Tr. 62-63). During the ALJ hearing an issue was raised regarding the "sit/stand option," of which the ALJ elicited further explanation, and the VE clarified during questioning. (Tr. 62). Moreover, Defendant makes the valid point that neither Plaintiff nor Plaintiff's counsel alleged any conflicts or inconsistencies when questioning the VE at the hearing. (Tr. 60 – 63). Although the Fourth Circuit has not specifically addressed this issue,

---

companion publication, the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles (SCO), published by the Department of Labor, and explain in the determination or decision how any conflict that has been identified was resolved and the basis for relying on the V.E. testimony rather than on the DOT information. (SSR 00-4p).

[13] *See also, Linsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 606 (6th Cir. 2009) (concluding that when an adjudicator asks the V.E. whether there is a conflict between the V.E.'s testimony and the DOT, and the V.E. credibly testifies that there was no such conflict, the adjudicator may rely on the V.E.'s testimony).

several other Circuits have made it clear that:

> Claimants should not be permitted to scan the record for implied or unexplained conflicts between the specific testimony of an expert witness and the voluminous provisions of the DOT, and then present that conflict as reversible error, when the conflict was not deemed sufficient to merit adversarial development in the administrative hearing.

*Carey v. Apfel*, 230 F.3d 131, 146-47 (5th Cir. 2000). Additionally, the Seventh Circuit has held that an attorney raising a discrepancy only after a hearing is too late. *See Mosteller v. Astrue*, No. 5:08-CV-003-RVL-DCK, 2010 WL 5317335, at *5 (W.D.N.C. Jul.26, 2010) (unpublished) (citing *Donahue v. Barnhart,* 279 F.3d 441, 446-47 (7th Cir. 2002) ("An ALJ is not obliged to reopen the record. On the record as it stands – that is, with no questions asked that reveal any shortcomings in the vocational expert's data or reasoning – the ALJ is entitled to reach the conclusion [he] did."). Failure to challenge the V.E.'s testimony until after the hearing "undermines Plaintiff's allegations that some substantial error occurred." *Pires v. Astrue*, 553 F.Supp.2d 15, 25 (D.Mass. 2008), (comparing *Carey v. Apfel*, 230 F.3d 131, 146 – 47 (5th Cir. 2000) (accepting VE's testimony, in part, because the testimony was unchallenged)).

Even if Plaintiff's claim is not waived for failure to raise the conflicts at the hearing, the "apparent conflicts" are not sufficient to require remand. As an individual with specialized knowledge of current vocational practices, the VE was qualified to determine which jobs Plaintiff could perform, given the limitations set forth by the RFC. Moreover, the ALJ properly relied on her testimony in finding that Plaintiff could perform other work that existed in significant numbers in the national economy. *See Moffett v. Apfel*, No. Civ. A. 99-0915-P-S, 2000 WL 1367991, at *7-8 (S.D. Ala. Sep. 1, 2000); *Cranfill v. Colvin*, No. 1:10CV925, 2013 WL 1736597, at *7 (M.D.N.C. Apr. 9, 2013) (citing *Ayscue v. Astrue*, No. 5:08-CV-595-FL, 2009 WL 3172121, at *14 (E.D.N.C. Oct. 2, 2009) (unpublished) ("In this case, the VE testified

that her determination was consistent with the DOT. Thus, the ALJ was not required to elicit a 'reasonable explanation' from the VE"). In conclusion, the VE's testimony that Plaintiff could perform the three jobs previously mentioned constitutes substantial evidence for the ALJ's decision. Thus, for the reasons discussed, Plaintiff's contention that the VE's testimony was improperly evaluated by the ALJ must fail.

> ii. **The ALJ's analysis of Plaintiff's pain and other symptoms followed applicable law and was supported by substantial evidence.**

Plaintiff argues that the ALJ improperly evaluated his pain and other symptoms pursuant to SSR 96-7p and 20 C.F.R. § 404.1529. (Doc. 10, at 16). Specifically, Plaintiff alleges that the ALJ improperly concluded that Plaintiff was "not credible," and "disregards or misstates the medical evidence on the record." (Doc. 10, at 17). This allegation is without merit.

The determination of whether a person is disabled by non-exertional pain or other symptoms is a two-step process. "First, there must be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." *Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996), citing 20 C.F.R. § 416.929(b); § 404.1529(b); 42 U.S.C. § 423(d)(5)(A). If there is such evidence, then the ALJ must then evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects his/her ability to work." *Id.* at 595; citing 20 C.F.R. § 416.929(c)(1) and § 404.1529(c)(1).

After careful consideration of Plaintiff's mental health record, the ALJ determined that:

[c]laimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statement's concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional

capacity assessment.

(Tr. 18). The ALJ thoroughly reviewed Plaintiff's medical and testimonial evidence regarding symptoms, their duration, frequency and intensity, and the efficacy of the medication and past treatment. (Tr. 13 – 23). The ALJ pointed out several inconsistencies between the Plaintiff's testimony and the medical records of treating physicians, including, but not limited to, Plaintiff's mobility due to knee issues, severity of Plaintiff's hypertension and mental disorders. (Tr. 19 – 21). Additionally, the ALJ found that the medical record did not contain "objective signs or findings that show that the claimant's limitations are due to his physical or mental conditions, as opposed to other non-medical reasons. *Id.*

Plaintiff contends that his failure to consistently seek appropriate medical treatment, was largely due to his financial inability. (Doc. 10, at 17). Although the ALJ may have erred in his failure to consider Plaintiff's financial inability to obtain treatment in his credibility determination, it is clear that ultimately the error played no role in ALJ's decision. Specifically, the ALJ provides substantial evidence in the record to support his RFC determination apart from financial considerations. The ALJ placed considerable reliance on the Plaintiff's self-reported activities of daily living, work history, and opinion evidence of medical consultants.[14] (Tr. 21 – 22). It is clear to this Court that the ALJ has provided substantial evidence in support of his credibility determination of the Plaintiff in the RFC assessment. As a result, no error of law exists.

---

[14] The opinions of non-examining physicians are not entitled to controlling weight, but must be considered and weighed as those of highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Social Security Act. (SSR 96-6p).

## V. CONCLUSION

The undersigned finds that there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" and thus substantial evidence exists to support the Commissioner's decision. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). Accordingly, the Commissioner's decision will be affirmed.

## VI. ORDER

**FOR THE FOREGOING REASONS**, Plaintiff's Motion for Summary Judgment [Doc.9] will be **DENIED**; Defendant's Motion for Summary Judgment [Doc. 11] is **GRANTED**; and the Commissioner's determination is **AFFIRMED**.

Signed: January 23, 2014

Richard L. Voorhees
United States District Judge